J-A03016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| RENEE B. RICKS AND ARTHUR RICKS, III | : : : | No. 376 EDA 2024 |
| Appellant | | |

Appeal from the Order Entered January 17, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210502491

BEFORE:  STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　　　**FILED MAY 2, 2025**

Renee B. Ricks and Arthur Ricks, III ("the Ricks") appeal from the order denying their petition to set aside the sheriff's sale of their foreclosed property. The Ricks argue the court erred or abused its discretion in finding The Bank of New York Mellon f/k/a The Bank of New York ("BNY") provided them with a reinstatement quote prior to the sale, in considering the sheriff's deed had been delivered, and in failing to appreciate the nature of property ownership in making its equity determination. They also argue Arthur Ricks was not properly served with the complaint or notice of the sheriff's sale. We affirm.

The Ricks executed a $62,000 mortgage in 2004 on a residence on Baltimore Avenue in Philadelphia. The original mortgagee assigned the mortgage to BNY in 2018. The Ricks defaulted on the mortgage in 2020. BNY filed a complaint in mortgage foreclosure in May 2021. The complaint included

a copy of the Act 91 notice[1] that BNY's mortgage servicer sent to the Ricks in November 2020, stating that the Ricks would need to pay $15,936.04 within 30 days to cure the default.

The Ricks were invited to participate in a mortgage diversion/conciliation program. Following a conciliation conference, the foreclosure action was stayed while the parties attempted to reconcile the debt. In November 2022, the court directed the Ricks to be removed from the program and lifted the stay. The court directed the Ricks to respond to the complaint by January 10, 2023, or risk the entry of default judgment.

The Ricks did not respond. On February 2, 2023, upon BNY's praecipe, the court entered default judgment in the amount of $79,902.38. The Ricks did not move to strike or open the default judgment.

Thirteen days later, BNY filed a praecipe for writ of execution. A sheriff's sale of the residence was scheduled for June 6, 2023.

The day before the sheriff's sale was scheduled to occur, counsel for the Ricks entered his appearance and filed an emergency petition to postpone the sale. The petition asserted that the Ricks were disabled senior citizens and that their daughter, Sabrina Ricks ("Sabrina"), was handling their affairs via power of attorney. The petition claimed that Sabrina had only learned of the sheriff's sale that day "by discovering a piece of mail that was not given to her in a timely manner due to [the Ricks'] disability[ies]." Emergency Petition,

_____

[1] **See** 35 P.S. § 1680.403c.

6/5/23, at ¶ 10. The petition claimed the Ricks sought to reinstate the mortgage. The petition also questioned the validity of service of the foreclosure complaint, stating, "[T]he original civil process claims to have made service upon [the Ricks'] daughter (who refused to give her name) at a date and time when [she] was at work." *Id.* at ¶ 26.

Following a hearing, the court granted the petition and rescheduled the sheriff's sale for July 11, 2023. The order directed BNY to provide the Ricks with both a reinstatement quote and a payoff quote on or before June 9, 2023. It also stated that the Ricks had acknowledged that no further notice or advertisement of the sheriff's sale would be required.

On June 30, the court granted BNY's uncontested petition to reassess damages, which BNY had filed in May. The order granting the petition stated that BNY's "damages and judgment amount are reassessed and/or amended to the sum of $105,312.08 as of 05/30/2023 plus ongoing interest at the rate of $10.55 per day." Order, 6/30/23, at 1. The judgment index was amended accordingly.

Approximately a week later, on July 6, 2023, the Ricks' counsel e-mailed BNY's counsel, requesting the reinstatement quote. BNY's counsel responded that a quote would be forthcoming, and BNY postponed the sheriff's sale to August 1, 2023. The August 1 sale went forward and the property was sold for $352,000.

Two months after the sale, on October 11, 2023, the Ricks filed the instant petition to set aside the sheriff's sale. The Ricks claimed they had not

received the reinstatement quote until after the sale, when it was e-mailed to counsel. The petition further alleged that Arthur Ricks had not been formally served with notice of the sale, claiming that the March 2023 notice served by a process server and the April 2023 notice sent via mail were both to an address on Garrison Way in Conshohocken, where Arthur Ricks did not reside. The petition also asserted that service of the complaint upon Arthur was defective, as it had been served at the Garrison Way address, and not by the sheriff.

The Ricks attached to the petition an e-mail conversation between the Ricks' counsel and BNY's counsel, dated July 6 and 7, 2003, wherein the Ricks' counsel requested a reinstatement quote pursuant to the June 6 order. In a reply email, BNY's counsel requested a copy of the order but did not address whether any quote had yet been sent. BNY's counsel stated that a quote would be forthcoming, and that BNY had agreed to postpone the July sheriff's sale. *See* Petition to Set Aside Sheriff's Sale, 10/11/23, at Exh. C.

Also attached to the petition was an e-mail from the Ricks' counsel to BNY's counsel dated August 1, 2023. The Ricks' counsel stated,

> I just realized that today is August 1, which was the new sale date after the last postponement. Please note that we have not yet received the reinstatement quote as required by the court's order. Would you please postpone the sale in your system so that we do not have to file a motion to set aside the sale.

*Id.* at Ex. D. BNY's counsel responded the next day – after the sale had occurred – and attached a reinstatement quote it had allegedly sent to Renee Ricks on July 7, 2023. *See id.* at Ex. D, E.

BNY filed a response, alleging it had sent a reinstatement quote on June 7, 2023, pursuant to the court's order, and an updated quote on July 7. *See* BNY's Response, 11/1/23, at ¶ 10. Attached to the response was a reinstatement quote, dated June 7, 2023, addressed to Renee Ricks at the Garrison Way address. *Id.* at Exh. H. It listed a reinstatement amount of $45,570.12, due by June 17. Also attached was a reinstatement quote dated July 7, 2023, addressed to Renee Ricks at the Garrison Way address, showing a reinstatement amount of $46,743.60, due that day. *Id.* at Exh. J.

The court scheduled a hearing on the petition for November 29, 2023. In the interim, in late October 2023, the sheriff filed a schedule for the distribution of sale proceeds and a deed acknowledgment. The schedule of distribution showed that, after satisfying all claims against the property, including costs and fees, $203,418.14 would remain for distribution to the Ricks.

The purchaser of the residence, JWMZ Realty, LLC ("JWMZ"), petitioned to intervene. Neither party objected, and the court granted the petition.

The Ricks then moved to continue the November hearing. The court granted the request and rescheduled it for January 8, 2024.

The January 8 hearing took place, but the Ricks did not attend. Their daughter, Sabrina, attended as power of attorney. Through counsel, the Ricks

argued they had not received the reinstatement quote until after the sheriff's sale, when the July 7 quote was e-mailed to counsel. The Ricks argued that while BNY asserted it had sent a quote directly to the Ricks by mail, BNY should have sent the quote to counsel. ***See*** N.T., 1/8/24, at 13 (counsel stating, "When something is required to be served upon a party, it should also be sent to counsel, especially when we're dealing with disabled people"), 45 (counsel stating, "When a court orders something to be served upon a party, they can't just go right to the party. It has to come to counsel as well").

The Ricks also challenged the validity of service of the original complaint and of the notice of sale, asserting that Arthur Ricks did not live at the Garrison Way address where those documents were served. The Ricks argued they did not file the petition to set aside the sale until two months after the sale because counsel for BNY had led them to believe the issue would be resolved out of court. The Ricks argued that while JWMZ might be inconvenienced if the sale were set aside, that party would ultimately retrieve its money and suffer no prejudice, whereas there would be "no other way to compensate [the Ricks] for this unique piece of real estate[.]" ***Id.*** at 47.

Sabrina testified that her father, Arthur Ricks, had lived with her sister on North Henderson Street in King of Prussia for the past year or two. Her mother, Renee Ricks, lives part of the time with Sabrina at the Garrison Way address, and part of the time with Sabrina's sister on North Henderson Street. Sabrina testified that she has been trying to get her elderly parents' finances back on track, and that her mother, Renee Ricks, hides their mail. Sabrina

admitted receiving the foreclosure complaint on her parents' behalf in 2021, attending the conciliation conference in 2022, and receiving notice of the sheriffs' sale in the mail in April 2023. She testified she became overwhelmed and sought the advice of counsel, who successfully postponed the sale. She and her two siblings have since pooled their money, hoping to reinstate the mortgage.

Sabrina testified that she did not receive any reinstatement quote prior to the sale, including the reinstatement quote that was allegedly sent to Renee Ricks on July 7. However, when asked whether it was true that the Ricks' counsel received a copy of the quote on or about July 7, Sabrina responded, "Correct." *Id.* at 37. The Ricks' counsel objected, arguing that Sabrina could not testify as to what he received, and reasserting that he had not received the July 7 reinstatement quote until after the sale, when it was e-mailed to him.

Counsel for BNY asserted that they had complied with the June order to provide a reinstatement quote, and the July 7 quote was the second one the mortgage servicer had sent to the Ricks. *Id.* at 10. She argued that if the Ricks had not received the quote, they should have contacted BNY prior to the August sale date.

Counsel for JWMZ argued that just days before the hearing, on January 3, 2024, the sheriff's deed to JWMZ was indexed and recorded. He argued that if the court were to set aside the sale, his client would need "to chase

after the sheriff to recover its money because that money has already been distributed in accordance with the proposed distribution." *Id.* at 12.

The court denied the petition, finding the Ricks had failed to establish that they were due equitable relief. As a factual matter, the court found that the Ricks had received the reinstatement quote before the sale. The court found Sabrina's "memory waffled" regarding her receipt of a reinstatement quote and that her "salient recollections concerning time frames were vague, inconsistent, and unpersuasive." Trial Court Opinion, 7/14/24, at 10.

The court also reasoned that even if the Ricks had not received the quote before the sale, they had been afforded ample opportunities to remedy their mortgage default or prevent the sheriffs' sale before it occurred. It stated that the Ricks had failed to meaningfully participate in the diversion/conciliation program; never answered the complaint, resulting in the entry of default judgment; and had not filed a petition to open or strike the default judgment. The court found the Ricks made "no appreciable effort" to contest the foreclosure or sheriff's sale until they filed the emergency petition to postpone the June sheriff's sale on the day before the sale was scheduled to occur. *Id.* at 11. The Ricks then waited until just before the July sale date to follow up for the reinstatement quote. After BNY agreed to have the sale postponed until August, the Ricks did not petition the court to postpone that sale on the basis they had not received the quote, but instead did nothing until two months after the sale to file the petition seeking to set aside the sale.

The court also found that granting the petition to set aside the sheriff's sale "would have been prejudicial to the remaining parties." *Id.* at 11. It noted that JWMZ argued it "would never be able to recoup lost interest and the process would take an unfair amount of time, effort, and expense to change the deed ownership and recover monies spent." *Id.* at 9.

The Ricks timely appealed. They raise the following issues.

    A. Should the [t]rial [c]ourt's decision be overturned when it is premised on a legal error with respect to Rule 3135?

    B. Should the [t]rial [c]ourt's decision be overturned when it is based on an erroneous factual determination that is premised on an error of law?

    C. Should the [t]rial [c]ourt's decision be set aside when it constitutes an abuse of discretion?

    D. Must the Sheriff Sale be set aside where notice was not properly given to Property Owner?

The Ricks' Br. at 3.

Our standard of review is as follows.

> We will not reverse a trial court's decision regarding whether to set aside a sheriff's sale absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the judgment is the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused.

*LSF8 Master Participation Trust v. Petrosky*, 271 A.3d 1288, 1291 (Pa.Super. 2022) (cleaned up).

Rule 3132 of the Pennsylvania Rules of Civil Procedure permits a court to set aside a sheriff's sale "upon proper cause shown" and where the court deems it "just and proper under the circumstances." Pa.R.Civ.P. 3132; *see*

- 9 -

*also Nationstar Mortg., LLC v. Lark*, 73 A.3d 1265, 1267 (Pa.Super. 2013). This analysis "is grounded in equitable principles." *LSF8 Master Participation Trust*, 271 A.3d at 1291 (citation omitted). The petitioner bears the burden to establish proper cause by clear evidence. *Bank of Am., N.A. v. Estate of Hood*, 47 A.3d 1208, 1211 (Pa.Super. 2012).

The Ricks first argue the court should not have considered that the deed had been executed by the time of the hearing. They contend the sheriff prematurely executed the deed, in violation of Rules 3132 and 3135, when the Ricks' petition to set aside the sheriff's sale was still pending. According to the Ricks, "The calculus of the equity analysis changes drastically if the improper acts of the Philadelphia Sheriff are properly evaluated." The Ricks' Br. at 11-12.

The Ricks did not specifically allege at the hearing that the sheriff executed the deed in violation of the civil rules, or that the court could not consider the fact that the deed had been executed. This issue is therefore waived. *See* Pa.R.A.P. 302(a). The Ricks assert they did not know the deed had been executed until the hearing. *See* The Ricks' Reply Br. at 4. However, they have never offered any reason they could not have learned of the deed's execution before the hearing with the exercise of reasonable diligence. Nor have they attempted to justify their failure to raise this claim at the hearing once they found out that the deed had been executed.

In any event, this issue is meritless. Regarding the timing of the petition to set aside the sale in relation to the delivery of the sheriff's deed, Rule 3132 provides as follows.

> Upon petition of any party in interest **before delivery of the personal property or of the sheriff's deed to real property**, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa.R.Civ.P. 3132 (emphasis added). Rule 3135 provides,

> (a) When real property is sold in execution **and no petition to set aside the sale has been filed**, the sheriff, at the expiration of twenty days but no later than 40 days after either the filing of the schedule of distribution or the execution sale if no schedule of distribution need be filed, shall execute and acknowledge before the prothonotary a deed to the property sold. The sheriff shall forthwith deliver the deed to the appropriate officers for recording and for registry if required. Confirmation of the sale by the court shall not be required.

Pa.R.Civ.P. 3135(a) (emphasis added).

Pursuant to these rules, the petitioner must file the petition to set aside the sale before the sheriff executes and delivers the deed. **See LSF8 Master Participation Trust**, 271 A.3d at 1291. The court must decide whether proper cause supports the petition without regard to prejudice to the purchaser at the sheriff's sale, as that party purchased the property at the risk the sale would be set aside. **See Merrill Lynch Mortg. Capital v. Steele**, 859 A.2d 788, 792 (Pa.Super. 2004); **see also Marra v. Stocker**, 615 A.2d 326, 330 (Pa. 1992). The sheriff's deed is not to be issued until after "the period for setting aside the sale is expired." **Merrill Lynch Mortg. Capital**,

- 11 -

859 A.2d at 793. After the delivery of the deed, a petition to set aside a sale may only be granted based on fraud or lack of authority to conduct the sale. *LSF8 Master Participation Trust*, 271 A.3d at 1291.

Here, the Ricks filed their petition to set aside the sale prior to the sheriff's delivery of the deed. The court did not rule otherwise. Nor did it decide the petition under the higher standard that applies after a sheriff's deed is delivered. Rather, the court decided the petition based on the principles of equity. Moreover, the court did not make its decision based solely on the fact that the deed had been delivered or emphasize that point. Rather, the court considered all the opportunities the Ricks had been afforded to prevent the judgment in foreclosure and the ensuing sheriff's sale, and their failure to avail themselves of them. And, although the Ricks filed their petition prior to the delivery of the deed, the court noted that they filed it a full two months after the sale. The court did not abuse its discretion in considering the late timing of the petition as part of its equity analysis. Any alleged Rule 3135 error was harmless here.[2]

The Ricks next argue the court abused its discretion by finding that BNY provided them with a reinstatement quote prior to the sale. The Ricks argue

---

[2] Neither BNY nor JWMZ argue that the court should have applied the higher standard to the timely petition, on the basis that the sheriff had delivered the deed. *See LSF8 Master Participation Trust*, 271 A.3d at 1291. Because we affirm the court's conclusion that the Ricks were not entitled to relief even under the lower standard, and because the issue has not been raised by any party to this appeal, we need not decide whether the law requires a court to apply the higher standard after a deed has been delivered, even where the petition was timely.

that "uncontroverted written evidence of [BNY's] failure to provide a valid reinstatement quote was properly presented at the hearing." The Ricks' Br. at 14. The Ricks direct us to the e-mails from BNY's counsel prior to the July sale, indicating that a reinstatement quote would be sent to counsel. The Ricks also emphasize that the July quote – e-mailed to counsel after the August sale – was impossible to perform on its face, as it was due on July 7 and allegedly mailed on July 7.

A mortgagor has until the hour before bidding at the sheriff's sale to cure a mortgage default by paying the full amount then due under the terms of the mortgage. *See* 41 P.S. § 404; *JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187, 195 (Pa. 2019).[3] BNY does not contest that it had a duty to provide an updated reinstatement quote prior to the sale, in accordance with this rule and with the June 6 court order.

The court did not abuse its discretion in concluding, as a matter of fact, that BNY provided the Ricks with a reinstatement quote prior to the sale. The court did not find Sabrina's testimony — that neither she nor her mother, Renee Ricks, had received either reinstatement quote allegedly sent to their Garrison Way address — to be credible. It was within the court's purview to make such a finding, and it is not expressly contradicted by the evidence of record.

---

[3] In the alternative, the mortgagor may prevent the sale by tendering the full amount of judgment. *NationsBanc Mortg. Corp. v. Grillo*, 827 A.2d 489, 493 (Pa.Super. 2003); *Morgan Guar. Trust Co. of N.Y. v. Mowl*, 705 A.2d 923, 927 (Pa.Super. 1998).

As a subsidiary of this issue, the Ricks argue the court erred in ruling they had been provided with a reinstatement quote when BNY sent the quote directly to them, rather than to their counsel. The Ricks allege this violated Rule 440, which requires legal papers to be served on a party's attorney of record.

Rule 440 requires service on each party's attorney of "[c]opies of all legal papers other than original process filed in an action or served upon any party to an action . . . ." Pa.R.Civ.P. 440. An official note to the rule states it applies to legal papers (aside from original process) including, but not limited to, "pleadings as well as motions, petitions, answers thereto, rules, notices, interrogatories and answers thereto." *Id.* at Note.

To the extent that the Ricks rely on Rule 440, we find their argument waived. Although the Ricks argued to the trial court that the reinstatement quote should have been sent to counsel, they did not specifically raise a violation of Rule 440. *See* Pa.R.A.P. 302(a), 1925(b)(4)(vii).

Regardless, no relief is due. The Ricks have advanced no Rule of Civil Procedure that requires the filing or service of a reinstatement quote upon a party, such that Rule 440 would apply, or any authority that qualifies a reinstatement quote as a "legal paper" under Rule 440.[4]

---

[4] We note that another rule, regarding electronic filing, defines "legal paper" for the purposes of that rule as "a pleading or other paper filed in an action, including exhibits and attachments." Pa.R.Civ.P. 205.4. That rule does not apply here.

Even if Rule 440 required that BNY send a copy of the reinstatement quote to the Ricks' counsel, the Ricks' counsel acknowledged he did not follow up with BNY for a copy of the quote between June 6, when the court ordered BNY to provide the quote, and July 6, or between July 7 and August 1, the day of the sale. Nor did the Ricks' counsel file a petition to stay the execution of the August sale on the basis that he had not received a copy of the quote. He did not petition the court to instruct BNY to have the quote sent to him or move for sanctions on the basis that BNY allegedly violated the June 6 court order or Rule 440. Therefore, the fact that BNY did not send a copy of the quote directly to counsel does not undermine the court's determination that setting aside the sale would not be just and proper under the instant circumstances. *See* Pa.R.Civ.P. 3132.

In their third issue, the Ricks argue the court abused its discretion in concluding that the equities do not weigh in their favor, considering the special nature of property ownership. The Ricks are disabled senior citizens, and Arthur Ricks is an armed forces veteran. The Ricks contend they were the victims of a predatory loan and have made payments for decades. Following foreclosure, they made attempts to reinstate the loan, including providing proof of funds. They were waiting for the reinstatement quote and, when they did not receive one prior to the sale, they petitioned within the legal time limits to set aside the sale. They argue the court abused its discretion in finding "that the difficulties of receiving a refund from the Philadelphia Sheriff and

interest outweigh something as sacrosanct as property ownership[.]" The Ricks' Br. at 17.

We repeat that the court's decision was not based primarily on potential prejudice to JWMZ, but on the Ricks' failure to avail themselves of the avenues for relief available to them prior to the sale. The court emphasized that the Ricks' participation in the conciliation/diversion program delayed the foreclosure action for over a year. Perhaps even more importantly, the Ricks failed to bring the issue of a missing reinstatement quote to the court's attention, after the June 6 order, and seek relief prior to the sale.

In addition, we note that according to the Ricks, a tenant, and not the Ricks, now resides at the property. The Ricks' Br. at 25. In the court below, the only benefit the Ricks cited from the property was its appreciation in value. *See* N.T. at 48 (counsel arguing that the subject property is "going to keep [the Ricks] having the health care in light of their serious needs"). However, the Ricks will receive the excess proceeds from the sheriff's sale. The court did not abuse its discretion in finding equity does not require setting aside the sale.

Finally, the Ricks argue the sale must be set aside because Arthur Ricks was served notice of the sale at the Garrison Way address, where he does not reside. They also contend BNY served notice of the complaint to Aruthur Ricks at the wrong address, and that it was served by someone other than the sheriff, as required by Rule 400.1.

This issue warrants no relief. A plaintiff's failure to conform to the rules regarding notice of the sheriff's sale may provide proper cause to set aside the sale where it prejudiced the defendant/petitioner. *Compare M & T Mortg. Corp. v. Keesler*, 826 A.2d 877, 880 (Pa.Super. 2003) (affirming denial of petition to set aside sheriff's sale where petitioner had actual notice of sale) with *First E. Bank, N.A. v. Campstead, Inc.*, 637 A.2d 1364, 1367 (Pa.Super. 1994) (finding failure to provide formal notice of sheriff's sale according to the rules was reason to set aside sale where appellant only learned of sheriff's sale the day before and "its ability to protect its interest may well have been impaired").

Here, Sabrina, who acts as power of attorney for the Ricks and lives at the Garrison Way address with Renee where the documents were allegedly erroneously served on Arthur, admitted to receiving notice of the writ of execution and the June date of the sheriff's sale. That the Ricks had actual notice of the first sale date is evidenced by the fact that they hired counsel and filed an emergency petition to postpone the sale. In that petition, the Ricks did not raise any issue regarding service of the notice of the sale upon Arthur. The court's June 6 order granting the petition states the Ricks acknowledged having notice of the July sheriff's sale and that no further notice would be required. The Ricks' counsel acknowledged in his August 1 e-mail that he "realized" that it was the day of the sale.

Next, a plaintiff's failure to conform to the rules regarding service of original process in a mortgage foreclosure will only affect the validity of

judgment when it offends due process and implicates the court's jurisdiction. *See, e.g., PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219, 230 (Pa.Super. 2007).

Here, Sabrina acknowledged receipt of the foreclosure complaint. The record reflects the Ricks thereafter participated, at least initially, in the conciliation/diversion program. At no point during the foreclosure proceedings did the Ricks raise any challenge to service, due process, or personal jurisdiction. Nor did they file a petition to open or strike the default judgment on that basis. The Ricks have not established that any alleged defect in the proceedings caused them prejudice such that the court was required to find proper cause to set aside the sheriff's sale.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/2/2025